Nicholas D. Myers (State Bar No. 251809)
  *nicholas@themyerslg.com*
Ivan U. Cisneros (State Bar No. 256232)
  *ivan@themyerslg.com*
Michael M. Kowsari (State Bar No. 186899)
  *michael@themyerslg.com*
**THE MYERS LAW GROUP**
4695 MacArthur Court, Suite 200
Newport Beach, California 92660
T:  949.825.5590
F:  949.861.6220
E: *litigation@themyerslg.com*

Attorneys for Plaintiff DANIEL OCHOA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| DANIEL OCHOA,<br><br>          Plaintiff,<br><br>     v.<br><br>ROBERTO LÓPEZ, RICHARD LOPEZ, ROBERT LÓPEZ, YVONNE ACOSTA and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No. 8:21-cv-00983<br><br>**COMPLAINT FOR:**<br><br>**1.  TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**<br><br>**2.  TRADEMARK DILUTION (15 U.S.C. § 1125(c))**<br><br>**3.  COMMON LAW TRADE NAME INFRINGEMENT**<br><br>**4.  CALIFORNIA STATUTORY TRADEMARK DILUTION (Cal. Bus. & Prof. § 14247 *et seq*)**<br><br>**5.  CALIFORNIA STATUTORY UNFAIR COMPETITION (Cal Bus. & Prof. Code §17200 *et seq.*)**<br><br>**6.  INTERFERENCE WITH PROSPECTIVE BUSINESS OPPORTUNITIES**<br><br>**7.  BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiff, Daniel Ochoa ("Ochoa" or "Plaintiff"), for his Complaint against Roberto López, Richard López, Robert López, and Yvonne Acosta (collectively "Defendants"), alleges as follows:

## JURISDICTION AND VENUE

1. This is a civil action for trademark infringement and dilution under the Lanham Act, 15 U.S.C. § 1114(a) and 15 U.S.C. § 1125(c); common law trade name infringement and state statutory trademark dilution; unfair competition under California Business & Professions Code § 17,200 *et seq.*; interference with prospective business advantage; and breach of contract. This Court has subject matter jurisdiction over the claims arising under the Lanham Act pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2. This Court has personal jurisdiction over all the Defendants as each has sufficient minimum contacts in the State of California to satisfy California's long-arm statute and Constitutional due process requirements.

3. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b) and (c) as Defendants reside in this District and because a substantial part of the events giving rise to the claims alleged in this Complaint occurred in this District.

## THE PARTIES

4. Plaintiff Daniel Ochoa resides at 1713 East Sycamore Street, Anaheim, California 92805.

5. On information and belief, Defendant Roberto López resides at 552 East Arrow Highway, Upland, California 91786.

6. On information and belief, Defendant Richard López resides at 552 East Arrow Highway, Upland, California 91786.

7. On information and belief, Defendant Robert López resides at 552 East Arrow Highway, Upland, California 91786.

///

8. On information and belief, Defendant Yvonne Acosta resides at 301 N. San Dimas Canyon Road, Apt. No. 37, San Dimas, California 91773.

9. The true names and capacities, whether individual, corporate or otherwise, of the Defendants named herein as Does 1 through 10 are presently unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of said Defendants when he has ascertained such information. Plaintiff is informed and believes that each Defendant named herein as Does 1 through 10 has participated in some or all of the acts or conduct alleged in this Complaint and is liable to Plaintiff by reason thereof.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### The El Tiempo Music Group and Its Associated Service Marks

10. The musical group El Tiempo was formed in 1984, performing in the style of Regional Mexican Grupera (also known as Grupero or Onda Grupera) music. The group released multiple records in the United States in the 1980s and 1990s.

11. Ochoa was a member of the partnership that originally owned the El Tiempo music group during the 1980's. Eventually, all the other original members of the partnership left and Ochoa became the sole owner of the group.

12. Although not a musician himself, as owner of the group, Ochoa was responsible for managing and hiring personnel to play in the band.

13. In 1989, Ochoa hired defendant Roberto López as the lead vocalist for the group after the previous vocalist left.

14. Defendant Roberto López eventually left the group in 1994.

15. El Tiempo has up through the present continued to perform and release music in the United States with different iterations of the band's lineup.

16. Also as owner of the group, Ochoa was responsible for securing and protecting the intellectual property associated with the group.

///

17. On October 17, 2000, Ochoa obtained the registration for the service mark EL TIEMPO in the United States Patent and Trademark Office ("USPTO"), Registration No. 2,395,936, for the use with "*Live entertainment services of a musical group*" (the "'936 Registration").

18. The '936 Registration lapsed through inadvertence on July 21, 2007.

19. Ochoa thereafter on June 24, 2008, re-registered the EL TIEMPO service mark with the USPTO, Registration No. 3,452,927, for use with "*Entertainment in the nature of live performances by a musical group*" (the "'927 Registration").

20. The '927 Registration was renewed in 2017, and has achieved incontestable status.

21. On August 19, 2014, Ochoa obtained the registration for the trademark EL TIEMPO in the USPTO, Registration No. 4,588,487, for the use with "*Audio and video recordings featuring music and artistic performances; Audio and video recordings featuring sound recordings of the musical group EL TIEMPO; Musical sound recordings; Pre-recorded CDs featuring sound recordings of the musical group EL TIEMPO; Pre-recorded electronic and digital media featuring sound recordings of the musical group EL TIEMPO; Series of musical sound recordings*" (the "'487 Regisrtation").

**Defendants' Wrongful Conduct**

22. As nostalgia for Grupera legacy acts has developed in the United States over the last decade so too has the demand for the performances of those acts at concert venues and for the purchase of their music on digital music platforms such as Pandora, Deezer, Spotify, Apple Music and YouTube Music.

23. Seeking to capitalize on this renewed popularity in Grupera legacy acts for their own gain, Defendants formed a band to perform such music. However, rather than building their own brand, Defendants have unlawfully and intentionally usurped the branding, popularity, and notoriety that Plaintiff developed for his El Tiempo group over the course of decades of hard work, effort, and persistence. Specifically,

since at least 2019, Defendants have performed and sold music under a name that includes the words "El Tiempo."

24. Defendants Roberto López, Richard López, and Robert López all perform as members in the band. Defendant Yvonne Acosta serves as the band's manager and accountant, securing venues and other forums for them to perform.

25. From mid-to-late 2019 to the present Defendants have conducted a nationwide concert tour performing at least at thirty-four different locations around the country from Iowa to Florida and California to New York. The band has been promoted and advertised by these venues using the words "El Tiempo" in some version of the group's name.

26. At these performances, Defendants have had banners or video monitors placed behind them displaying the words "El Tiempo" along with their likenesses.

27. At these performances, Defendants have also used musical instruments with the words "El Tiempo" painted on them. For example, on the crowd-facing portion of the bass drum is written in large letters the words "El Tiempo."

28. During this same period, Defendants have also offered songs, EPs and albums for sale on various digital music platforms, including Apple Music, Spotify, Deezer, YouTube Music and Pandora, under a name that includes the words "El Tiempo." Defendants have also placed advertisements in music magazines promoting the purchase of their digital music highlighting the words "El Tiempo" and their likenesses in the advertisement.

29. At or near the beginning of this recent concert tour, Defendants also appeared on a local Univision morning television show "Despierta Valle Central" that serves the Central Valley of California. During this televised appearance, Defendants performed under a name that includes the words "El Tiempo" in it. Moreover, during their musical performance there were video screens/televisions behind them displaying the words "El Tiempo." A video of Defendants' performance can be found at YouTube at the following URL:

1 https://www.youtube.com/watch?v=zqpL7OzmWFQ.

2    30.    Defendants have also offered for sale a variety of merchandise, *e.g.* coffee mugs, key chains, and T-shirts, at their performances (that are also offered for sale online) with the words "El Tiempo" emblazoned on the products oftentimes along with Defendants' likenesses.

31.    Defendants also own a number of social media accounts promoting all of this activity.

32.    For instance, Defendants own a Facebook account entitled "Grupo El Tiempo" (translated "The El Tiempo Group") with a URL of https://facebook.com/grupoeltiempo.derobertolopez/ . On the account's home page Defendants have emblazoned a neon logo with the words "El Tiemp" in it together with a picture of themselves. This account also displays the advertisements from the different venues throughout the country where they toured recently performing under a name that includes the words "El Tiempo."

33.    Defendants also own another Facebook account with a URL of https://facebook.com/lostiemposderobertolopez/. This account is also replete with content that displays the words "El Tiempo" in connection with Defendants.

34.    Defendants have a third Facebook account with a URL of https://facebook.com/ElTiempoMexico/?ref=py_c. This account is also replete with content where the group is shown performing while displaying the words "El Tiempo".

35.    This is not the first time Defendant Roberto López has traded off on the "El Tiempo" name to make money.

36.    An earlier iteration of such a false "El Tiempo" legacy act was set up by defendant Roberto López in 2010 that he called "Robert y su Grupo El Tiempo," which translates as "Robert and his group El Tiempo."

/ / /

/ / /

37. In July 2011, Ochoa sued defendant Roberto López and other members of this fake legacy act in this Court for infringing his federally registered EL TIEMPO service mark, *Daniel Ochoa v. Roberto Lopez, et. al.*, Case No. SACV 11-01118 (the "1118 Action").

38. Ochoa later permitted the dismissal of the 1118 Action after defendant Roberto López signed an agreement on August 16, 2011, providing, among other things, the following: "Lopez acknowledges and accepts that Ochoa is the owner of the band and musical group El Tiempo as well as the registration of the El Tiempo mark with the United States Patent and Trademark Office, reg. no. 3,452,927, with the registration date of June 24, 2008. Lopez renounces all and any right, interest or property with respect to the El Tiempo mark and the registry mentioned here."

39. When defendant Roberto López failed to execute other documents associated with the agreement, Ochoa filed a second suit against him with this Court, *Daniel Ochoa v. Roberto Lopez*, Case No. 2:11-CV-09239 (the "9239 Action") for trademark infringement and associated state law claims. That suit ended with the entry of a default judgment and permanent injunction against defendant Roberto López on May 21, 2012.

40. On December 30, 2020, defendants Roberto López and Robert López filed with the USPTO a Petition for Cancellation of the '927 Registration, *Roberto Lopez, et al. v. Daniel Ochoa*, Cancellation No. 92076083. The matter is currently still pending before the USPTO.

## FIRST CLAIM FOR RELIEF
### (FEDERAL TRADEMARK INFRINGEMENT)
### (Against All Defendants)

41. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 40 above, as if fully set forth herein.

42. At all relevant times hereto, Plaintiff has been the sole and exclusive owner of the EL TIEMPO service mark and trademark, including, among others, the

following United States trademark registrations for "El Tiempo": Registration No. 3,452,927, and Registration No. 4,588, 487 both of which are valid and subsisting.

43. Plaintiff's registered trademarks includes use for, but is not limited to: "*Entertainment in the nature of live performances by a musical group*" and "*Audio and video recordings featuring music and artistic performances.*"

44. Plaintiff has overseen, controlled, and directed musical services marketed, advertised, and promoted in connection with the EL TIEMPO service mark and trademark. As a result of this marketing, advertising, promotion and use of the EL TIEMPO service mark and trademark, the marks have come to mean and are understood to signify a direct connection to the El Tiempo musical group that began in the 1980s playing Regional Mexican Grupera music. The EL TIEMPO service mark and trademark are one of the means by which such goods and services are distinguished from the goods and services of others in the market.

45. Through continued and extensive use and advertising, the EL TIEMPO service mark and trademark are distinctive and, at a minimum, have acquired secondary meaning by purchasers and the consuming public so as to become exclusively identified with reference to the El Tiempo musical group owned and managed by Plaintiff.

46. Including through his zealous oversight of the services rendered in connection with the EL TIEMPO marks, Plaintiff has cultivated goodwill in the service mark and trademark, and entertainment services and audio/video recordings performed under the name "El Tiempo" and using the EL TIEMPO service mark and trademark are understood by customers to be the authentic, authorized and/or endorsed El Tiempo musical group by Plaintiff.

47. Defendants have infringed Plaintiff's service mark and trademark in interstate commerce by various acts, including the promotion and marketing of their band using the words "El Tiempo" in the band's name. Defendants wrongfully used and continue to use a mark substantially similar to the EL TIEMPO marks and/or

other words, terms, names, symbols, or devices, in commerce, in connection with their goods and services.

48. Such use is without permission or authority of Plaintiff.

49. Defendants unauthorized use of the EL TIEMPO trade name and service mark in connection with their musical performances and offering for sale songs and other merchandise is likely to cause confusion, mistake, or deception as to the source, origin, or approval of Defendants' goods and services.

50. Defendants' activities are also likely to lead members of the public to conclude, incorrectly, that Defendants are affiliated, connected and/or associated with Plaintiff's El Tiempo music group, to the damage and harm to the Plaintiff and the public. Defendants' actions have led to instances of actual confusion by concert promoters and consumers as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities, by Plaintiff.

51. Defendants' violation of Plaintiff's rights in the service mark and trademark "EL TIEMPO" is knowing, willful, deliberate, fraudulent, and intentional, and was made with the knowledge that such a violation would damage Plaintiff and his service mark and trademark.

52. As a direct result of Defendants' violations, as aforesaid, Plaintiff has suffered substantial damages in an amount to be proven at trial.

53. Monetary relief alone is not adequate to address fully the irreparable injury that Defendants' illegal actions have caused and will continue to cause Plaintiff if Defendants' actions are not enjoined: (i) Plaintiff's EL TIEMPO service mark and trademark are a unique and extremely valuable property right, (ii) Defendants' infringement of those marks constitutes an interference with Plaintiff's goodwill in the marks and customer relationships, and will substantially harm Plaintiff's reputation and the EL TIEMPO marks as the source for the authentic El Tiempo musical group that originated in the 1980s, and (iii) Defendants' wrongful conduct, and the damages resulting to Plaintiff, are continuing. Accordingly, Plaintiff is also

entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116(a), to stop Defendants' ongoing acts.

54. Defendants' unlawful and willful conduct renders this case an exceptional case, and therefore Plaintiff is entitled to recover reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF
## (FEDERAL TRADEMARK DILUTION)
### (Against All Defendants)

55. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 54 above, as if fully set forth herein.

56. Through use in advertising of Plaintiff's musical group's services, through airplay, record sales, the appearance of the musical group on broadcast television in Mexico and the United States, newspaper and magazine articles concerning the group, and through public appearances at dances and events, the El Tiempo trade name and EL TIEMPO service mark are famous and recognized by the consuming public throughout the United States for Regional Mexican Grupera musical works and performances of the same.

57. Long after the EL TIEMPO service mark and trademark became famous and well-known among the consuming public throughout the United States, Defendants misappropriated the EL TIEMPO service mark and trademark for their own use and commercial advantage in interstate commerce, without authorization and in disregard of Plaintiff's rights, and in a manner that will cause dilution by blurring of Plaintiff's EL TIEMPO service mark and trademark.

58. Separately, Defendants' juxtaposition of the EL TIEMPO service mark and trademark with their goods and services that cannot properly be called the El Tiempo group's goods or services has caused and/or will cause damage to the reputation of the EL TIEMPO service mark and trademark, and thereby constitutes dilution by tarnishment of the EL TIEMPO service mark and trademark.

59. Defendants' unauthorized use of the trade name and registered service mark belonging to Plaintiff tends to and does dilute the distinctive quality of the trade name and registered service mark and will diminish and destroy the public association of the trade name and registered service mark with Plaintiff's musical group.

60. Plaintiff is informed and believes, and on that basis alleges, that Defendants knowingly and willfully intended to trade on and dilute Plaintiff's goodwill and reputation of his EL TIEMPO service mark and trademark.

61. Defendants' actions have caused Plaintiff damage, and thus Plaintiff is entitled to recover Defendants' profits together with the Plaintiff's damages, which may be trebled, as well as costs of the action pursuant to 15 U.S.C. § 1117(a).

62. Defendants' unlawful and willful conduct renders this case an exceptional case, further entitling Plaintiff to recover its reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

63. Plaintiff stands to suffer irreparable harm and dilution to his EL TIEMPO service mark and trademark through blurring and tarnishment of this service mark and trademark, and Plaintiff is therefore entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c).

### THIRD CLAIM FOR RELIEF
### (COMMON LAW TRADE NAME INFRINGEMENT)
### (Against All Defendants)

64. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 63 above, as if fully set forth herein.

65. At all times relevant hereto, Plaintiff has been the sole and exclusive owner of the trade name rights to "El Tiempo" used in commerce in this State and nationally in connection with the performance of live music.

66. Over the past 36 years, Plaintiff's musical group has continuously performed and sold songs in the United States under the name "El Tiempo."

/ / /

67. Through his continuous use of the "El Tiempo" trade name and service mark over 36 years, Plaintiff has established common law rights in the "El Tiempo" trade name for entertainment, particularly live music and audio/video recordings in the Regional Mexican Grupera musical genre.

68. Defendants have infringed Plaintiff's trade name in interstate commerce by various acts, including the promotion and marketing of their band under a name that includes the words "El Tiempo" in it. Defendants wrongfully used and continues to use a trade name substantially similar to the El Tiempo trade name and/or other words, terms, names, symbols, or devices, in commerce, in connection with their goods and services.

69. Such use is without permission or authority of Plaintiff and is likely to cause and has already caused confusion, mistake or deception as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods, services or commercial activities, by Plaintiff.

70. Defendants' violation of Plaintiff's trade name rights in the service mark and trademark "El Tiempo" is knowing, willful, deliberate, and intentional, and was made with the knowledge that such violation would damage Plaintiff and the trade name and trademark.

71. In performing the conduct described above, on information and belief, Defendants acted with oppression and malice, intending to injure Plaintiff and to wrongfully advantage themselves at Plaintiff's expense. Plaintiff is entitled to an award of compensatory and punitive damages against Defendants, in an amount to be ascertained at trial.

72. Absent injunctive relief, Plaintiff has no means by which to control Defendants' infringement of the "El Tiempo" trade name. Plaintiff is thus entitled to preliminary and permanent injunctive relief prohibiting Defendants from continuing to commit such acts as described above.

## FOURTH CLAIM FOR RELIEF
## (TRADEMARK DILUTION UNDER STATE LAW)
## (Cal. Bus. & Prof. Code § 14247 *et. seq.*)
## (Against All Defendants)

73. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 72 above, as if fully set forth herein.

74. Defendants' conduct, as detailed above, dilutes the distinctive quality of Plaintiff's "El Tiempo" service mark and trademark. This constitutes trademark dilution under Cal. Bus. & Prof. Code § 14247 *et seq*.

75. In performing the conduct described above, on information and belief, Defendants acted knowingly, willfully and with malice, intending to injure Plaintiff and to wrongfully advantage themselves at Plaintiff's expense. Plaintiff is therefore entitled to an award of Defendants' profits and Plaintiff's damages, both of which may be trebled.

76. Absent injunctive relief, Plaintiff has no means by which to control Defendants' infringement and dilution of the "El Tiempo" service mark and trademark. Plaintiff is thus entitled to preliminary and permanent injunctive relief prohibiting Defendants from continuing to commit such acts as described above.

## FIFTH CLAIM FOR RELIEF
## (UNFAIR COMPETITION UNDER STATE LAW)
## (Cal. Bus. & Prof. Code § 17200 *et. seq.*)
## (Against All Defendants)

77. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 76 above, as if fully set forth herein.

78. At all times relevant hereto, Plaintiff has been the exclusive owner of the service mark and trademark EL TIEMPO.

79. Through continued and extensive use and advertising, the service mark and trademark EL TIEMPO has become exclusively identified with Plaintiff.

80. Defendants' acts as described above have impaired the goodwill in the EL TIEMPO service mark and trademark, have created a likelihood of confusion among the consuming public in this judicial district and elsewhere, and have otherwise adversely affected Plaintiff's business and reputation by use of unfair business practices and false association, including, but not limited to, trademark infringement and trademark dilution. These acts constitute unfair competition and unfair business practices under Cal. Bus. & Prof. Code § 17200 *et. seq.*

81. Defendants' violation of Plaintiff's rights in the service mark and trademark are willful, deliberate, and intentional, and was made with the knowledge that such violation would damage Plaintiff and his service mark and trademark.

82. Defendants' aforesaid actions constitute unlawful, unfair, malicious or fraudulent practices that have injured and violated the rights of Plaintiff in an amount to be determined at trial.

83. As a direct result of Defendants' violations, absent injunctive relief, Plaintiff has no means by which to control Defendants' deceptive and confusing use of the EL TIEMPO service mark and trademark. Plaintiff is thus entitled to injunctive relief prohibiting Defendants from continuing their acts of unfair competition. Plaintiff is also entitled to restitution to the extent provided by law.

## SIXTH CLAIM FOR RELIEF
### (INTERFERENCE WITH PROSPECTIVE BUSINESS OPPORTUNITIES)
### (Against All Defendants)

84. Plaintiff realleges and incorporates by reference all the allegations in paragraphs 1 through 83 above, as if fully set forth herein.

85. Plaintiff had a reasonable probability of future business opportunities and economic benefits in connections with both (i) his relationship with concert venues in this country promoting the performance of Regional Mexican Grupera music and (ii) his relationship with consumers of Regional Mexican Grupera music.

86. Defendants had knowledge of such opportunities for Plaintiff.

87. Defendants and each of them, through their actions, have intentionally interfered with or knew that such disruption was certain or substantially certain to occur to such prospective business opportunities of Plaintiff by, among other things, interfering with the right of Plaintiff to exploit and benefit commercially from the trade name and registered service mark and the goodwill of the business of Plaintiff's El Tiempo musical group.

88. Defendants' actions have disrupted Plaintiff's relationships and business opportunities with concert venues offering musical acts playing and consumers of Regional Mexican Grupera music.

89. As a direct and proximate result of Defendants' conduct, Plaintiff has been injured by Defendants in an amount to be proven at trial.

90. Defendants committed these tortious acts with deliberate and actual malice, ill-will, and oppression in conscious disregard of Plaintiff's legal rights. Plaintiff therefore should be awarded punitive or exemplary damages.

## SEVENTH CLAIM FOR RELIEF
### (BREACH OF CONTRACT)
### (Against Defendant Roberto López)

91. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 90 above, as if fully set forth herein.

92. On or about August 16, 2011, Plaintiff and defendant Roberto López entered into a written agreement whereby defendant agreed to renounce any and all right or interest in the '927 Registration. In return, Plaintiff agreed to dismiss the 1118 Action against defendant.

93. Plaintiff performed his duties and obligations under the agreement and allowed for the dismissal of the 1118 Action against defendant on September 30, 2011. Thus, Plaintiff has performed all of the conditions, covenants, provisions, and terms required on his part to be performed pursuant to the agreement.

///

94. Defendant Roberto López filed with the USPTO on December 30, 2020 a petition to cancel the '927 Registration, Cancellation No. 92076083.

95. Defendant Roberto López has breached the agreement by filing the petition for cancellation thereby interfering with Plaintiff's interest in the '927 Registration and depriving Plaintiff of the benefits under the agreement.

96. As a direct result of defendant's breach, absent injunctive relief, Plaintiff has no means by which to control defendant's interference with Plaintiff's interest in the '927 Registration as defendant had agreed to in the agreement. Plaintiff is thus entitled to injunctive relief prohibiting defendant Roberto López from maintaining and prosecuting the petition to cancel, Cancellation No. 92076083, the '927 Registration in the USPTO.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For an order requiring Defendants to show cause, if they have any, why they should not be enjoined as set forth below, during the pendency of this action.

2. For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendants and each of them and their agents, servants, employees and co-venturers, and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from engaging in or performing any of the following acts:

(a) Using the name "El Tiempo" or any confusingly similar or colorable imitation of the name, including any name which includes the word "Tiempo," in connection with advertising in any form, or in connection with the goods or services of defendants or any of them;

(b) Using the name "El Tiempo" or any confusingly similar or colorable imitation of the name, including any name which includes the word "Tiempo," in any manner for the purpose of enhancing the commercial value of the

goods or services of Defendants;

  (c) Otherwise infringing or diluting the distinctive quality of Plaintiff's registered service mark and trade name "El Tiempo";

  (d) Causing a likelihood of confusion, deception or mistake as to the makeup, source, nature or quality of Plaintiff's or Defendants' services;

  (e) Contacting promoters, advertisers or other businesses for the purpose of offering the services of Defendants as "El Tiempo" or any confusingly similar or colorable imitation of the name.

 3. For an order requiring Defendants to deliver up and destroy, at Defendants' sole expense, any and all promotional literature, advertising, goods and other material bearing the infringing, diluting or injurious designations or mark, pursuant to 15 U.S.C. § 1118.

 4. That Defendants be directed to file with this Court and serve on Plaintiff within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction, pursuant to 15 U.S.C. § 1116.

 5. That Defendants be required to account to Plaintiff for all income and benefits received by Defendants from use of Plaintiff's service mark, trademark, or colorable imitation thereof, and that Defendants be required to disgorge all such income.

 6. That defendant Roberto López be required to withdraw with prejudice his petition for cancellation with the USPTO, Cancellation No. 92076083.

 7. For actual damages in an amount to be proved at trial.

 8. For costs, including reasonable attorney's fees.

 9. For treble the amount of actual damages suffered by Plaintiff.

 10. For punitive damages in an amount to be proved at trial

/ / /

/ / /

11. For prejudgment and post-judgment interest.

12. For such other relief as the court deems appropriate.

Date: June 2, 2021          **THE MYERS LAW GROUP**

/s/ Michael M. Kowsari
Nicholas D. Myers
Ivan U. Cisneros
Michael M. Kowsari
Attorneys for Plaintiff DANIEL OCHOA